## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

_____
                                 )

| | | |
|---|---|---|
| ARAYOS LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| JIMMIE ELLIS, SYDKAL, INC., | ) | |
| MISTY BURR, CLEOLA LUK, | ) | |
| JOHN M. VELLIANITIS, JMV, INC. and | ) | |
| PAXOS MANAGEMENT SERVICES, INC., | ) | |
| | ) | |
| Defendants | ) | |

_____)

## COMPLAINT & DEMAND FOR JURY TRIAL

NOW COMES Plaintiff Arayos LLC, by and through its undersigned counsel, and hereby complains against Defendants Jimmie Ellis, Sydkal, Inc., Misty Burr, Cleola Luk, John M. Vellianitis, JMV, Inc., and PAXOS Management Services, Inc., as follows:

<u>THE PARTIES</u>

1. Plaintiff Arayos LLC ("Arayos") is a Maine limited liability company with a principal place of business in the City of Bangor, County of Penobscot and State of Maine.  Arayos owns and operated Diamonds Gentleman's Club ("Diamonds"), a nightclub located at 190 Harlow Street in Bangor, Maine.

2. Defendant Jimmie Ellis ("Ellis") is an individual residing in the Town of Theodore, County of Mobile, and State of Alabama.  Ellis is the owner and President of Defendant Sydkal, Inc.

1

3.      Defendant Misty Burr ("Burr") is an individual residing in the Town of Theodore, County of Mobile, and State of Alabama.  Burr is the wife of Defendant Ellis.

4.      Defendant Cleola Luk ("Luk") is an individual residing in the City of Bangor, County of Penobscot and State of Maine.

5.      Defendant John M. Vellianitis ("Vellianitis") is an individual residing in the City of Mobile, County of Mobile, and State of Alabama.  John Vellianitis is President and owner of Defendants JMV, Inc. and PAXOS Management Services, Inc.

6.      Defendant JMV, Inc. ("JMV") is an Alabama business corporation with a principal place of business in the City of Mobile, County of Mobile, and State of Alabama. Defendant JMV owns and/or operates one or more nightclubs and/or restaurants in Mobile, Alabama.

7.      Defendant PAXOS Management Services, Inc. ("PAXOS") is an Alabama business corporation with a principal place of business in the City of Mobile, County of Mobile, and State of Alabama.  Defendant PAXOS owns and/or operates one or more nightclubs and/or restaurants in Mobile, Alabama.

<u>JURISDICTION & VENUE</u>

8.      Venue is proper in this court because the Plaintiff is a Maine limited liability company with a principal place of business in the City of Bangor, County of Penobscot and State of Maine.

9.      This Court has original subject matter over the racketeering claims set forth in this Complaint pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.  Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental subject matter jurisdiction over the state law claims of conversion, intentional misrepresentation,

2

negligent misrepresentation, breach of fiduciary duty, negligence, and civil conspiracy claims because those claims are so related to the federal racketeering claims that they form part of the same case or controversy.

10.     This Court has original subject matter over the federal trademark infringement claims set forth in this Complaint pursuant to 28 U.S.C. § 1331 because they arise under the laws of the United States.

11.     This Court has personal jurisdiction over the Defendants because each Defendant has or has had minimum contacts with the State of Maine sufficient to enable this Court to assert jurisdiction over their person consistent with the requirements of the United State Constitution and other governing authority.

12.     There are no pending state court proceedings relating to any or all of the factual allegations and/or legal claims asserted in this Complaint.

<u>FACTS</u>

<u>Introduction</u>

13.     This lawsuit arises primarily out of a scheme to defraud, embezzle and steal from Arayos that was orchestrated primarily by Defendants Ellis and Sydkal, who were hired by Arayos to operate Diamonds Gentleman's Club in Bangor, Maine shortly after it opened in February 2012.  Over a period of some nineteen (19) months, the Ellis-Sydkal parties engaged in multiple acts and omissions to defraud Arayos; to steal, misappropriate and otherwise convert the property, assets and revenues of Arayos for their own unauthorized uses and purposes; to transport stolen funds across state lines and make use of interstate wires in furtherance of the fraudulent schemes and thefts; and to

misappropriate marks, names and design logos with respect to which Arayos had ownership and other proprietary rights under federal and state trademark law.

14.     As part of their overarching scheme, the Ellis-Sydkal parties enlisted the active cooperation and participation of Defendant Burr (Ellis' wife) and Defendant Luk, who Ellis hired as a bookkeeper for Arayos while Ellis was serving as operator of Diamonds.  Burr and Luk conspired with the Ellis-Sydkal parties to defraud Arayos and steal, misappropriate and otherwise convert the property, assets and revenues of Arayos for their own unauthorized uses and purposes.

15.     Defendants Ellis and Sydkal also conspired with, and enlisted the active cooperation and participation of, Defendants Vellianitis, JMV and PAXOS, as part of a scheme to: (a) misappropriate Arayos' protected trademarks for use in the sale and marketing of similar products and services in Mobile, Alabama; and (b) use, convert and otherwise misappropriate Arayos' money and other assets for purposes of funding, benefiting and/or investing in one or more nightclubs in Mobile, Alabama owned and/or operated by Defendants Ellis, Sydkal, Vellianitis, JMV and/or PAXOS.

16.     In furtherance of their scheme to defraud and steal from Arayos while they were charged with operations and bookkeeping, Defendants Ellis, Sydkal and Luk also failed to pay and otherwise deposit the trust fund tax liabilities owed to the federal government in connection with the income and payroll tax withholding for Arayos' employees required by law, and failed to file the required quarterly tax returns for five straight quarters from April 1, 2012 to June 30, 2013, resulting in the IRS's assessment of substantial penalties and interest against Arayos.

17.     As a proximate result of the above-referenced misconduct of the Defendants, and other actionable acts and omissions described more fully below, Plaintiff Arayos has suffered direct financial and economic harm in an amount not less than $200,000.00, as well as damage to its reputation in the community and the industry.

Opening of Diamonds Gentleman's Club and<br>Hiring of Ellis and Sydkal as Operator

18.     Arayos owns and operates Diamonds Gentleman's Club ("Diamonds"), a nightclub in Bangor, Maine that opened for business in February of 2012.  Prior to opening for business, Arayos hired Jimmie Ellis and his management company, Sydkal, Inc., to oversee all operations associated with the club.  Ellis described and otherwise held himself out as an experienced nightclub operator who had successfully operated numerous clubs in Alabama and other places in the southern United States.  Plaintiff found out much later that Ellis had actually engaged in similar fraudulent schemes and thefts in connection with those relationships.

19.     At the time Diamonds opened for business in February of 2012, the majority owner of Arayos was Red Brick Trust ("Red Brick"), a revocable trust with respect to which Scott A. Liberty ("Liberty") served as trustee.  Red Brick Trust became sole owner of Arayos in September of 2012.

20.     Red Brick, whose trustee resides in New Gloucester, Maine, served largely an absentee owner during this period and was not involved in the day-to-day management of the business.

21.     Arayos hired Ellis and his management company, Sydkal, to operate the club, in exchange for weekly compensation of $700.00 and payment of Ellis' reasonable travel and lodging expenses.  In return, Ellis and Sydkal agreed to oversee all aspects of the

operation and management of Diamonds club, including but not limited to the hiring, payment and firing of employees; retaining and otherwise dealing with vendors, suppliers and contractors; bookkeeping and accounts payable and receivable; local, state and federal regulatory compliance; and quarterly and annual tax filing and reporting requirements, among other duties.

Unauthorized Takings of Cash from Arayos Bank Accounts

22.     From the start, Ellis began to steal money from Arayos.  On November 17, 2011, two and a half months before the club opened, the unauthorized sum of $17,500.00 was paid to Jimmie Ellis in the form of a check written by James Tower to Jimmie Ellis.

23.     Additional unauthorized checks and withdrawals totaling $15,036.74 were taken by Ellis during the period from May 23, 2012 to July 23, 2012 directly from Arayos checking account at Key Bank.  As of July 23, 2012, Ellis had taken at least $32,536.74 directly from Arayos accounts at Bangor Savings Bank and Key Bank without authorization.

24.     During the period from June 2012 through September 9, 2013 – when Ellis was a signatory on the Arayos accounts at KeyBank – he also used Arayos funds to pay for his own personal expenses having nothing to do with the operation of Diamonds or his lodging and travel expenses, thus converting thousands of dollars more for his own use and benefit.

25.     Ellis' theft of money from Arayos and Diamonds took several other forms as well, included but not limited to those listed here and described more fully below: (a) theft of cash directly from the operations of the club on a regular and systemic basis during the period from March 1, 2012 to September 8, 2013; (b) theft of proceeds from the

6

operations of Diamonds ATM machine in operation on the premises of the club from July 16, 2012 to September 16, 2013; (c) payment of monies for the training and lodging of managers and operators for his clubs down south; (d) payment of funds to his wife, Defendant Misty Burr, during a 16-week period when she was not an actual employee of Diamonds or doing any work for Diamonds; and (e) theft, misappropriation and unauthorized use of marks, names and logos with respect to which Arayos had proprietary and ownership rights under state and federal law.

<u>Theft and Diversion of Fees and Proceeds from Diamonds ATM Machine</u>

26.     On or about April 5, 2012, Arayos installed an ATM machine on the premises at Diamonds that generated fees for the company.  The ATM machine was set up and managed by Dale J. Holman of Eagle ATM, LLC.  Fees and proceeds from the use of the ATM were deposited directly into the company's operating account at Key Bank. During the period from April 5, 2012 to July 16, 2012, the on-site ATM machine generated approximately $2,160.00 per month, or $500.00 per week, in ATM user fees for Arayos, consistent with the estimate set forth in the Setup Form for the ATM.

27.     In mid-July, 2012, at the direction and request of Ellis, a new Triton ATM machine was purchased for Arayos (using Arayos' funds) and a different processing company was hired.  Arayos' majority owner was reluctant to replace the original ATM machine and terminate its management agreement with the prior ATM servicer, Eagle ATM, LLC, but did so based on Ellis' representation and assurance that a new machine and processing company would generate substantially more money in user fees for the club. This time, however, without knowledge or authorization of Arayos or its majority owner, Ellis arranged for the fees and proceeds from the use of the ATM machine to be

deposited into an account at Key Bank in the name of Ellis' management company, Defendant Sydkal, rather than Arayos' operating account at Key Bank.

28.     The Triton ATM machine was in use at Diamonds during the 14-month period from July 16, 2012 until September 16, 2013.  The user fee during this period was $9.00 per transaction, $3.00 higher than the fees for the former ATM machine at the club. During that period, the Triton ATM machine was generating approximately $600.00 per week.  In total, based on all the information and evidence available to Arayos, approximately $36,000.00 in user fees were generated during the 60-week period from July 16, 2012 until September 16, 2013.  This is a conservative estimate based on: (a) the history of use of the machine and the fees charged; (b) review of bank records from the Sydkal account into which all proceeds were deposited; and (c) fees generated by use of former machine as well as the new machines now in operation at Diamonds.

29.     The fees from the operation of Diamonds' Triton ATM machine, however, were not deposited into any Arayos account but were instead misdirected by Ellis into the Key Bank account in the name of Ellis's operating company, Sydkal.  The approximately $36,000.00 in fees generated from the operation of the ATM at Diamonds – diverted by Ellis into the Sydkal account at Key Bank – were never paid or transferred to Arayos or any Arayos bank account.

30.     On September 4, 2013, Arayos learned for the first time that the proceeds and user fees generated from replacement ATM machine installed on or about July 16, 2012 – and in operation at Diamonds until September 16, 2013 – were never deposited into any Arayos account but were rather misdirected to an account in the name of Ellis' management company, Sydkal.  Before meeting with Ellis on September 4, 2013, Scott

Liberty (trustee for Arayos' sole owner, Red Brick) paid a visit to Key Bank in Bangor and met with two representatives who disclosed to him the existence of a separate bank account in the name of Sydkal, Inc., Ellis' management company, which had substantial financial activity. The Key Bank representatives also indicated at that time that there was no evidence of any ATM-type activity through any of the Arayos accounts. When Liberty first confronted Ellis about the ATM machine over dinner on September 4, 2013, Ellis assured Liberty that the fees from the ATM machine were going into Arayos' account at Key Bank.

31.     At a subsequent meeting at Diamonds after dinner on September 4, 2013, Liberty disclosed to Ellis that he had learned about a separate account at Key Bank and that the ATM proceeds had not been going into the Arayos account. Ellis finally admitted to Liberty that he had set the machine up so that the user fees and proceeds went into an account in the name of his company, Sydkal, and that none of the substantial fees and generated from 14 months' worth of operation of the machine had ever gone to or for the benefit of Arayos and Diamonds. Ellis started to panic and became nervous, and swore up and down to Liberty that the ATM machine was the only secret he had kept from him and there was nothing else he had not told Liberty about.

32.     As set forth above, Arayos' compensation agreement with Ellis and his company was limited to $700.00 per week plus payment of certain travel and related expenses. This was a generous compensation agreement given the fact that Ellis was serving as operator for other enterprises during this time period, was based in Alabama, and would spend only several days at Diamonds every 2-3 weeks. There was no

agreement with Arayos authorizing the diversion of funds from its own ATM machine to Defendants Ellis or Sydkal.

33.     On September 4, 2013, immediately after Arayos discovered Ellis' theft of the ATM machine proceeds, Ellis immediately tried to divert Liberty's attention to James Tower, and disclosed to Liberty for the first time that Tower had stolen substantial sums of money from Arayos and Diamonds.  Ellis gave Liberty several boxes of documents to support the reported theft by Tower.  Ellis' peculiar behavior that day appeared to be a blatant attempt to discourage Liberty from probing further into Ellis' own thefts and misconduct.

34.     Arayos' review of documentation and discussion with employees further confirmed Ellis' unauthorized theft of the ATM user fees and proceeds, as well as highly suspicious behavior by Ellis with regard to the ATM machine and the Sydkal account in the two weeks immediately following the day, September 4th, when Liberty confronted him about the proceeds from the club's ATM machine.

35.     In the days and weeks after learning about the ATM machine on September 4, 2013, Arayos probed further into thefts and other misconduct by Ellis.  Interviews were conducted with Manager Allison "Randy" Stone and VIP Director Brittany LeVasseur, who had been at the club during the entire period that Ellis was serving as Operator.  They provided information confirming the diversion of ATM fees and proceeds to Ellis' management company, as well as other schemes by Ellis to take money from the Diamonds operations, set forth more fully below.

36.     All or part of the Diamonds' ATM fee revenue that was diverted and otherwise stolen by Ellis and Sydkal – estimated to be at least $36,000.00 – was transferred

across state lines from Maine to Alabama, and all or part was diverted and otherwise stolen using interstate banking wires.  Upon information and belief, the diverted and stolen funds were retained and/or spent by Ellis and/or Sydkal, were transferred in part to Ellis' wife, Defendant Misty Burr, and/or were transferred in part to enterprises owned and/or operated by Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS.

Failure to Fund Payroll Tax Liabilities &
Fraudulent Efforts to Purchase the Nightclub

37.     Starting in May of 2013, Liberty had become increasingly suspicious of the activities of Ellis and Sydkal and the fact that Diamonds was showing little or no profit. Liberty learned for the first time in May of 2013 that Ellis and Sydkal – and the club's bookkeeper, Defendant Luk, who had been hired by Ellis in mid-2012 – had not paid or funded any of the payroll tax liabilities owed to the federal government in connection with Arayos' employees during the last two calendar quarters of 2012 and the first two calendar quarters of 2013, and that no quarterly tax returns had been filed for those five quarters. Those unfunded federal tax liabilities amounted to approximately $100,000.00, and resulted in additional penalties and interest totaling approximately $20,000.00 as of the date of this Complaint.

38.     From the spring of 2013 through early September, Ellis made overtures to Liberty for a sale of Diamonds to Ellis and/or Sydkal.  Upon information and belief, Ellis and Sydkal intended to use the stolen monies to purchase Diamonds from Arayos, and sought to financially damage the nightclub – through theft, embezzlement, deceit, faulty bookkeeping, and mismanagement, among other means – in order to drive down the value of the nightclub is sought to acquire from Arayos.  As part of its fraudulent scheme, the Ellis-Sydkal parties had run the club into the ground and were seeking to pose as the white

nights that would take the burden of the nightclub – and its growing financial liabilities – out of the hands of Arayos, Liberty and Red Brick.

<u>Theft of Cash Generated from the Sale of Test Tube Shots</u>

39.     During the period from March 1, 2012 until September 8, 2013, Ellis regularly took cash from the safe that was generated by the sale of test tubes shots (also known as "Jell-O shots" or "shooters") by roaming waitresses at Diamonds, which cash was the property of Diamonds and Arayos.  Ellis took those cash proceeds from the safe every time he came to Diamonds, which was at least every 2-3 weeks, and was regularly observed doing so by club manager Allison "Randy" Stone, who had a key to the safe. The funds taken by Ellis from the safe were never replenished, nor were they deposited into any Arayos bank account.

40.     According to club manager Stone and the club's VIP Director, Brittany LeVasseur, the cash revenues generated from the sale of test tubes shots by roaming waitresses at club amounted to approximately $900.00 per week during the relevant period ($3.00 net proceeds per shot times average of 300 test tube shots sold per week).  The total amount of cash taken by Ellis from these revenues amounts during the 76-week period from March 1, 2012 to September 8, 2013 is thus estimated to be $68,400.00.

41.     According to Stone and LeVasseur, Ellis told them different things along the way about why he was taking this money from the safe.  At times he would say that he had a deal with Arayos or its majority owner whereby he was entitled to half the money from the sale of test tube shots.  At other times he would say he took the funds because he was not getting paid his compensation as operator.  Ellis had no such deal with Arayos or its owner.  Ellis was regularly and consistently paid the $700.00 per week that he was

entitled to under the agreement, and his travel and related expenses were regularly and consistently paid for with Arayos funds. Moreover, Ellis never told Arayos or Liberty that he was not getting paid regularly, and neither Arayos nor Liberty ever authorized payment to Ellis in cash from the club's safe.

42.     Arayos further discovered – based on its review of bank records and discussions with club manager Stone – that Ellis undertook unusual and suspicious activity in advance of the scheduled meeting with Mr. Liberty on September 4, 2013. A large sum of cash was withdrawn from the Sydkal account at Key Bank, so that the safe at Diamonds would be "in balance" at the time of the majority owner's arrival at the club on September 4th. On or about September 6, 2013 – subsequent to Mr. Liberty's departure – Ellis took $4,700.00 out of the safe at Diamonds and put it back into his Sydkal account. On September 12, 2103, after Ellis had left town to go back to Alabama, Ellis directed club manager Stone to take another $4,200.00 from the safe and/or the ATM machine and deposit that amount into his Sydkal account. Stone realized soon thereafter that Ellis was endeavoring to cover his tracks and siphon off as much money as he could before he was terminated by Arayos for theft and misconduct.

43.     All or part of the revenues from the sale of test tube shots at Diamonds that was diverted and otherwise stolen by Ellis and Sydkal over a 76-week period – estimated to be at least $68,400.00 – was transferred across state lines from Maine to Alabama, and all or part was diverted and otherwise stolen using interstate banking wires. Upon information and belief, the diverted and stolen funds were retained and/or spent by Ellis and/or Sydkal, were transferred in part to Ellis' wife, Defendant Misty Burr, and/or were

transferred in part to enterprises owned and/or operated by Defendants Ellis, Sydkal,

Vellianitis, JMV and PAXOS.

Diversion of Arayos Funds to Pay for Training of
Managers and DJ's for Other Clubs Operated by Ellis

44.     On several occasions, Ellis brought managers and DJ's up from down south

to train them for other clubs he operated in Alabama.  These individuals were paid with

Diamonds/Arayos' funds, and their lodging expenses were also paid for with

Diamonds/Arayos' funds.  The managers were paid around $100.00 per shift and the DJ's

were paid around $65.00 per shift.  The first manager (Clint Johnson) was here for

approximately two months, and the second manager and the DJ were here for

approximately two months as well, all during 2013.  The first manager's rent in the amount

of $100.00 per week was paid for by Diamonds.  The second manager and DJ stayed for a

time at a condominium rented by Ellis and paid for with Diamonds/Arayos' funds at a cost

of $1,200.00 per month for not less than two months.  The total cost to Diamonds of these

expenditures, largely for the benefit of Ellis and other clubs he was operating down in

Alabama, was not less than $10,000.00.

45.     Upon information and belief, Ellis and Sydkal were using Arayos' assets

and resources to train DJ's and managers for nightclubs owned and/or operated by

Defendants Vellianitis, JMV, PAXOS in Mobile, Alabama, and in doing so were acting as

agents of Defendants Vellianitis, JMV and/or PAXOS and with their knowledge.

Termination of Ellis and Sydkal

46.     On or about September 16, 2013, the services of Ellis and Sydkal as

operator of Diamonds were formally terminated in writing for, among other grounds,

fraud, conversion, theft, embezzlement and mismanagement.

14

47.     On or about September 30, 2013, Arayos made a criminal complaint against Ellis and Sydkal to the Bangor Police Department for theft and embezzlement.

Participation of Bookkeeper Cleola Luk in the<br>Schemes to Defraud and Steal from Arayos

48.     Starting in November of 2013, Liberty became suspicious of bookkeeper Cleola Luk and her participation in the scheme to defraud and steal from Arayos.  As the investigation into Ellis and Sydkal continued, and the accounts and books were reviewed, it was discovered that Luk had known about – and had assisted in covering up – the thefts and misconduct of Ellis and Sydkal, and had herself diverted substantial sums of money for her own use and benefit.  Luk's services as bookkeeper were terminated on or about January 2, 2013.

Trademark Infringement

49.     In December of 2013, Arayos registered its marks with the United States Patent and Trademark Office, which marks bear U.S. Serial No. 86132064 (as to the name "Diamonds Gentleman's Club") and U.S. Serial No. 86132089 (as to design and logo for Diamonds Gentleman's Club).

50.     In December of 2013, Arayos learned that Ellis and Sydkal had stolen and otherwise misappropriated the marks, artwork, name and logo of Diamonds Gentleman's Club and, together with Defendants Vellianitis, JMV and PAXOS, were using same without authorization in Mobile Alabama to market and sell services and goods similar to that of Diamonds.  Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS were marketing, selling and operating under the name "Diamonds Gentleman's Club," with a virtually identical logo and artwork of that belonging to Arayos, at a nightclub located at 4664 Airport Boulevard in Mobile, Alabama.  Among other marketing and uses, these

15

Defendants had developed a Facebook page prominently displaying the name, mark and logo belonging to Arayos and developed for Arayos while Ellis and Sydkal were serving as operator of Diamonds in Bangor, Maine.

51.     On January 6, 2014, Arayos sent cease and desist letters to Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS, demanding that they immediately cease and desist from any further use of Arayos protected marks, designs or logos, any confusingly similar marks, designs or logos, in the marketing, promotion or sale of goods and services.  Arayos further demanded that Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS provide written assurance no later than January 20, 2014 that they were in full compliance with the demand to cease and desist.

52.     Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS provided no written response or assurance by January 20, 2014, and to date have provided no such response or assurance, written or verbal.  After receiving the cease and desist letter, said Defendants removed the infringing design logo from its publicly viewable Facebook page, and restricted public access to the full content on its Facebook page that was publicly available at the time Arayos sent the cease and desist letters on January 6, 2014.  Defendants Ellis, Sydkal, Vellianitis, JMV and/or PAXOS are still operating the nightclub 4664 Airport Boulevard in Mobile under the name "Diamonds Gentleman's Club", and, upon information and belief, are still otherwise using, without authorization, Arayos' legally protected marks in the marketing, promotion or sale of goods and/or services.

Interstate Activity

53.     In furtherance of the above-described schemes and actions to steal from and otherwise defraud Arayos, Defendants Ellis, Sydkal, Burr, Luk, Vellianitis, JMV and

PAXOS transmitted communications and messages across states lines by telephone, facsimile, email and/or text messages.

54.     In furtherance of the above-described schemes and actions to steal from and otherwise defraud Arayos, Defendants Ellis, Sydkal and Burr transported stolen property across state lines, and, in particular, transported cash, checks, trademarks, artwork, designs and logos belonging to Arayos from Maine to Alabama.  Upon information and belief, Defendants Ellis and Sydkal transferred part or all of the monies, funds and other assets stolen from Arayos and Diamonds in Maine to enterprises in Alabama owned and/or operated by Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS, including without limitation a nightclub doing business under the name Diamonds and/or Diamonds Gentleman's Club at 4664 Airport Boulevard in Mobile, Alabama.  Further upon information and belief, Defendants Ellis and/or Sydkal transferred part or all of the monies, funds and other assets stolen from Arayos and Diamonds in Maine to Ellis' wife, Defendant Misty Burr, who resides in Alabama.

55.     In furtherance of the above-described schemes and actions to steal from and otherwise defraud Arayos, Defendants Ellis, Sydkal, Burr and Luk made use of interstate wires – including but not limited to the financial processing of transactions conducted on Arayos' ATM machine – for purposes of transferring and otherwise diverting money and property belonging to Arayos into accounts in the name of Ellis, Sydkal, Burr and/or Luk.

<u>Losses and Damages Suffered by Arayos</u>

56.     As a direct consequence of the actions and omissions of the Defendants, Plaintiff Arayos has suffered extensive financial and economic harm, damage to its reputation in the community and the industry, and other losses.  The financial and

economic harm suffered by Arayos amounts to not less than $200,000.00 and includes, without limitation, the following: (a) Not less than $150,000.00 in funds and monies belonging to Arayos was stolen, converted or otherwise misappropriated by the Defendants for their own use and benefit; not less than $10,000.00 in funds paid to train and house managers and DJ's for nightclubs in Alabama owned and/or operated by Defendants; (c) Arayos has incurred approximately $20,000.00 in federal tax penalties and interest as a result of the failure to pay federal trust fund taxes and file 941 forms when due; (d) Arayos has incurred not less than $15,000.00 in legal fees – <u>excluding</u> any legal fees associated with the preparation or filing of this lawsuit – in connection with its own investigation of Defendants' thefts, fraudulent schemes, trademark infringement and other misconduct, its communications with law enforcement authorities regarding same, its efforts to address and resolve the unpaid tax liabilities and trust fund violations with the Internal Revenue Service, and its efforts to mitigate the harm cause by Defendants' misconduct; and (e) Arayos has also incurred not less than $10,000.00 in accounting and bookkeeping expenses as the direct result Defendants' thefts, fraudulent schemes and other misconduct set forth herein.

**<u>COUNT I</u>**
***Violations of 18 U.S.C. § 1962(c)***
***Racketeering***
(Against Ellis, Sydkal, Burr and Luk)

57.     Plaintiffs repeat and restate the allegations in paragraphs 1-56 as if fully set forth herein.

58.     Defendant Ellis, Sydkal and Burr are "enterprises" within the meaning of 18 U.S.C. § 1961(4) engaged in or whose activities affect interstate commerce.

59.     Defendants Ellis, Sydkal, Burr and Luk are associated in fact within the meaning of 18 U.S.C. § 1961(4) so as to constitute an enterprise within the meaning of that statute (hereinafter the "Ellis-Sydkal-Burr-Luk Enterprise").  The Ellis-Sydkal-Burr-Luk Enterprise is an enterprise engaged in or whose activities affect interstate commerce.

60.     Defendants Ellis, Sydkal, Burr and Luk (hereinafter the "Count I Defendants") have, directly or indirectly, participated in the affairs of the Ellis, Sydkal and Burr enterprises, and the Ellis-Sydkal-Burr-Luk Enterprise, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

61.     As part of their pattern of racketeering activity, the Count I Defendants committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343.  Among other racketeering activity, Defendants Ellis, Sydkal, Burr and Luk: (a) made or caused to be made or transmitted a series of interstate statements, communications and/or signals by telephone, facsimile, electronic mail and text message in furtherance of their scheme to defraud Arayos and obtain money and other property from Arayos by false or fraudulent pretenses, representations and promises; and (b) made use of interstate wires, including but not limited to the financial processing of transactions conducted on Arayos' ATM machine, for purposes of transferring and otherwise diverting money and property belonging to Arayos into accounts in the name of Ellis, Sydkal, Burr and/or Luk.

62.     As part of their pattern of racketeering activity, the Defendants Ellis, Sydkal and Burr committed multiple acts of transporting stolen property in violation of 18 U.S.C. § 2314.  Among other racketeering activity, Defendants Ellis, Burr and Sydkal: (a) stole, converted and otherwise misappropriated for their own use and benefit vast sums of money belonging to Arayos, and transported these monies, including but not limited to cash and

unauthorized checks, across state lines in travels from Maine to Alabama; and (b) used interstate wires, including but not limited to financial processing of transactions conducted using Arayos' ATM machine, for purposes of diverting money and property belonging to Arayos to accounts in the name of Ellis, Sydkal, Burr and/or Luk.

63.     As a result of the racketeering conduct of the Count I Defendants set forth herein, Plaintiff Arayos was deprived of its property interests.

64.     The Count I Defendants aided and abetted one another in their racketeering activities.

65.     As a direct and proximate result of the Count I Defendants' racketeering activities of in violation of 18 U.S.C. § 1962(c), and/or their aiding and abetting of one another's racketeering activities, Plaintiff Arayos has suffered direct and consequential harm in the amount of not less than $200,000.00, and are entitled to treble damages therefor as well as reasonable attorney's fees and costs pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff Arayos LLC respectfully requests that this Court:

A.     Order that the Count I Defendants return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B.     Award such compensatory damages to Plaintiff as area appropriate, plus interest and costs;

C.     Award treble damages and attorney's fees and costs to Plaintiff pursuant to 18 U.S.C. § 1964(c);

D.     Award punitive damages to Plaintiff where appropriate; and

E.     Award such other and further relief as is just and proper.

20

## COUNT II
### *Violations of 18 U.S.C. § 1962(c)*
### *Racketeering*
(Against Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS)

66.     Plaintiffs repeat and restate the allegations in paragraphs 1-65 as if fully set forth herein.

67.     Defendant Ellis, Sydkal, Vellianitis, JMV and PAXOS are "enterprises" within the meaning of 18 U.S.C. § 1961(4) engaged in or whose activities affect interstate commerce.

68.     Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS are associated in fact within the meaning of 18 U.S.C. § 1961(4) so as to constitute an enterprise within the meaning of that statute (hereinafter the "Ellis-Vellianitis Enterprise").  The Ellis-Vellianitis Enterprise is an enterprise engaged in or whose activities affect interstate commerce.

69.     Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS (hereinafter the "Count II Defendants") have, directly or indirectly, participated in the affairs of the Ellis, Sydkal, Vellianitis, JMV and PAXOS enterprises, and the Ellis-Vellianitis Enterprise, through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

70.     As part of their pattern of racketeering activity, the Count II Defendants committed multiple acts of wire fraud in violation of 18 U.S.C. § 1343.  Among other racketeering activity, the Count II Defendants made or caused to be made or transmitted a series of interstate statements, communications and/or signals by telephone, facsimile, electronic mail and text message in furtherance of their scheme to defraud Arayos and obtain money, trademarks, artwork, designs, logos and other property from Arayos by false or fraudulent pretenses, representations and promises.

71.     As part of their pattern of racketeering activity, the Count II Defendants committed multiple acts of transporting stolen property in violation of 18 U.S.C. § 2314. Among other racketeering activity, the Count II Defendants stole, converted and otherwise misappropriated for their own use and benefit money, trademarks, artwork, designs, logos and other property belonging to Arayos, and transported this property, including but not limited to cash and unauthorized checks, across state lines in travels from Maine to Alabama.

72.     As a result of the racketeering conduct of the Count II Defendants, Plaintiff Arayos was deprived of its property interests.

73.     The Count II Defendants aided and abetted one another in their racketeering activities.

74.     As a proximate result of the Count II Defendants' racketeering activities of in violation of 18 U.S.C. § 1962(c), and/or their aiding and abetting of one another's racketeering activities, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to recover treble damages as well as its reasonable attorney's fees and costs.

WHEREFORE, Plaintiff Arayos LLC respectfully requests that this Court:

A.     Order that the Count II Defendants return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

      B.      Award such compensatory damages to Plaintiff as area appropriate, plus interest and costs;

      C.      Award treble damages and attorney's fees and costs to Plaintiff pursuant to 18 U.S.C. § 1964(c);

      D.      Award punitive damages to Plaintiff where appropriate; and

      E.      Award such other and further relief as is just and proper.

### COUNT III
***Conversion***
(Against All Defendants)

75.      Plaintiffs repeat and restate the allegations in paragraphs 1-74 as if fully set forth herein.

76.      At all pertinent times hereto, Plaintiff Arayos had the exclusive right to possession, ownership and control of, *inter alia*, the following: (a) all cash and other proceeds generated from the operation of Diamonds Gentleman's Club in Bangor, Maine; (b) all cash and other proceeds generated by the ATM machine at Diamonds; (c) all cash locate in the safe at Diamonds; (d) all funds contained in any bank accounts in the name of Arayos; (e) all funds loaned or advanced to Arayos and (f) trademarks, designs and logos for Diamonds Gentleman's Club.

77.      As set forth in paragraphs 13-52 of this Complaint, Defendants converted, stole, transferred and/or misappropriated for their own use and benefit, property with respect to which Plaintiff Arayos had the exclusive right to possession, ownership and control.

78.      At no time were any of the Defendants authorized or entitled to convert, transfer or appropriate for their own personal use and benefit any of the property with

respect to which Plaintiff Arayos had the exclusive right to possession, ownership and control.

79.     Defendants have failed to return to Plaintiff any of the converted, stolen, transferred and otherwise misappropriated property with respect to which Plaintiff Arayos had the exclusive right to possession, ownership and control.

80.     As a proximate result of Defendants' unauthorized, wrongful and tortious conversion of Plaintiff's property, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

81.     The wrongful actions of Defendant set forth herein constitute actual malice and/or malice implied.  As a result, Plaintiffs are entitled to punitive damages in addition to compensatory and consequential damages arising from such wrongful actions.

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.     Order that Defendants return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B.     Order Defendants to pay such compensatory and consequential damages to Plaintiffs as are appropriate, plus interest and costs;

C.     Order that Defendants pay punitive damages to the Plaintiffs; and

D.     Award such other and further relief as is just and proper.

## COUNT IV

### *Intentional Misrepresentation*
(Against Defendants Ellis, Sydkal and Luk)

82.     Plaintiffs repeat and restate the allegations in paragraphs 1-81 as if fully set forth herein.

83.     Defendant Ellis, on behalf of himself and his company, Sydkal, made a series of false and misleading representations and assurances to Plaintiff Arayos (and its owners and agents), including, without limitation, the following: (a) that Ellis and Sydkal were operating Diamonds and taking care of its affairs for the benefit of and in service to the club's owner, Plaintiff Arayos; (b) that Ellis and Sydkal would pay and were paying the expenses owed by Arayos as they became due, including payroll tax liabilities; (c) that Ellis and Sydkal would generate profits for Arayos and its owners; (d) that the procurement of a new ATM machine for Diamonds with a new ATM servicer would increase the user fees and proceeds generated for Arayos; and (e) that Diamonds had less net revenues than were actually being generated by its operation.

84.     At the time of the above-described representations and assurances to Plaintiff Arayos, Defendants knew that those representations and assurances were false and/or misleading.

85.     Defendant Ellis on behalf of himself and his company, Sydkal also omitted to inform Arayos (or its owners and agents) of information which Ellis and Sydkal had a duty to disclose, including, without limitation, the following: (a) that James Tower was stealing money and property from Arayos; (b) that Ellis and Sydkal were stealing money and property from Arayos; (c) that Ellis' wife was being paid as an employee of the company; (d) that Luk was stealing money and property from Arayos; (e) that contractors

were not getting paid for work done on the Diamonds nightclub; and (f) that payroll tax liabilities owed by Arayos in connection with the compensation of its employees were not being paid or funded.

86.     At the time of the above-described omissions, Defendants Ellis and Sydkal knew that the omission to inform Plaintiff of the above-described material information would mislead the Plaintiff.

87.     Defendant Luk made a series of false and misleading representations and assurances to Plaintiff Arayos (and its owners and agents), including, without limitation, the following: (a) that Ellis and Sydkal were operating Diamonds and taking care of its affairs for the benefit of and in service to the club's owner, Plaintiff Arayos; (b) that Ellis and Sydkal would pay or were paying the expenses owed by Arayos as they became due, including payroll tax liabilities; and (c) that Luk was keeping the books of the company in an accurate and complete manner and was reporting and documenting all transactions including the inflow and outflows of cash.

88.     At the time of the above-described representations and assurances to Plaintiff Arayos, Defendant Luk knew that those representations and assurances were false and/or misleading.

89.     Defendant Luk also omitted to inform Arayos (or its owners and agents) of information which Luk had a duty to disclose, including, without limitation, the following: (a) that James Tower was stealing money and property from Arayos; (b) that Ellis and Sydkal were stealing money and property from Arayos; (c) that Ellis' wife was being paid as an employee of the company; (d) that Luk was stealing money and property from Arayos; (e) that contractors were not getting paid for work done on the Diamonds

nightclub; and (f) that payroll tax liabilities owed by Arayos in connection with the compensation of its employees were not being paid or funded.

90.     At the time of the above-described omissions, Defendant Luk knew that the omission to inform Plaintiff of that material information would mislead the Plaintiff.

91.     Plaintiff Arayos relied upon all the false and misleading representations and material omissions of Defendants Ellis, Sydkal and Luk.

92.     Under all the relevant circumstances, Plaintiff's reliance upon the false and misleading representations and material omissions of Defendants Ellis, Sydkal and Luk was reasonable.

93.     As a proximate result of Plaintiff's reasonable reliance on the false and misleading representations and material omissions of Defendants Ellis, Sydkal and Luk, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

94.     The fraudulent actions of Defendants Ellis and Sydkal set forth herein constitute actual malice and/or malice implied.  As a result, Plaintiffs are entitled to punitive damages in addition to compensatory and consequential damages arising from such fraudulent actions.

        WHEREFORE, Plaintiffs respectfully requests that this Court:

        A.     Order that Defendants Ellis, Sydkal and Luk return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B.      Order Defendants Ellis, Sydkal and Luk to pay such compensatory and consequential damages to Plaintiffs as are appropriate, plus interest and costs;

C.      Order Defendants Ellis, Sydkal and Luk to pay punitive damages to the Plaintiffs; and

D.      Award such other and further relief as is just and proper.

### COUNT V
***Negligent Misrepresentation***
(Against Defendants Ellis, Sydkal and Luk)

95.     Plaintiffs repeat and restate the allegations in paragraphs 1-94 as if fully set forth herein.

96.     Defendant Ellis, on behalf of himself and his company, Sydkal, made a series of false and misleading representations and assurances to Plaintiff Arayos (and its owners and agents), including, without limitation, the following: (a) that Ellis and Sydkal were operating Diamonds and taking care of its affairs for the benefit of and in service to the nightclub's owner, Plaintiff Arayos; (b) that Ellis and Sydkal would pay and were paying the expenses owed by Arayos as they became due, including payroll tax liabilities; (c) that Ellis and Sydkal would make money for Arayos and its owners; (d) that the procurement of a new ATM machine for Diamonds with a new ATM servicer would increase the user fees and proceeds generated for Arayos; and (e) that Diamonds had substantially less in net revenues than was actually being generated from its operation.

97.     At the time of the above-described representations and assurances to Plaintiff Arayos, Defendants Ellis and Sydkal had a duty to Plaintiff to exercise reasonable care in avoiding such false and misleading representations and assurances, and, in the very least, should have known that those representations and assurances were false and/or

misleading or that they would mislead the Plaintiff. In making those false and

representations and assurances, Defendants Ellis and Sydkal were, in the very least,

negligent.

98.     Defendant Ellis on behalf of himself and his company, Sydkal also omitted

to inform Arayos (or its owners and agents) of information which Ellis and Sydkal had a

duty to disclose, including, without limitation, the following: (a) that James Tower was

stealing money and property from Arayos; (b) that Ellis and Sydkal were stealing money

and property from Arayos; (c) that Ellis' wife was being paid as an employee of the

company; (d) that Luk was stealing money and property from Arayos; (e) that contractors

were not getting paid for work done on the Diamonds nightclub; and (f) that payroll tax

liabilities owed by Arayos in connection with the compensation of its employees were not

being paid or funded.

99.     Defendants Ellis and Sydkal had a duty to avoid misleading Plaintiff by

exercising reasonable care in apprising Plaintiff of facts of which Plaintiff should have

been made aware. In failing to apprising Plaintiff of facts of which Plaintiff should have

been made aware, Defendants Ellis and Sydkal were, in the very least, negligent.

100.    Defendant Luk made a series of false and misleading representations and

assurances to Plaintiff Arayos (and its owners and agents), including, without limitation,

the following: (a) that Ellis and Sydkal were operating Diamonds and taking care of its

affairs for the benefit of and in service to the club's owner, Plaintiff Arayos; (b) that Ellis

and Sydkal would pay or were paying the expenses owed by Arayos as they became due,

including payroll tax liabilities; and (c) that Luk was keeping the books of the company in

an accurate and complete manner and was reporting and documenting all transactions including the inflow and outflows of cash.

101.    At the time of the above-described representations and assurances to Plaintiff Arayos, Defendant Luk had a duty to Plaintiff to exercise reasonable care in avoiding such false and misleading representations and assurances, and, in the very least, should have known that those representations and assurances were false and/or misleading or that they would mislead the Plaintiff.  In making those false and representations and assurances, Defendant Luk was, in the very least, negligent.

102.    Defendant Luk also omitted to inform Arayos (or its owners and agents) of information which Luk had a duty to disclose, including, without limitation, the following: (a) that James Tower was stealing money and property from Arayos; (b) that Ellis and Sydkal were stealing money and property from Arayos; (c) that Ellis' wife was being paid as an employee of the company; (d) that Luk was stealing money and property from Arayos; (e) that contractors were not getting paid for work done on the Diamonds nightclub; and (f) that payroll tax liabilities owed by Arayos in connection with the compensation of its employees were not being paid or funded.

103.    Defendant Luk had a duty to avoid misleading Plaintiff by exercising reasonable care in apprising Plaintiff of facts of which Plaintiff should have been made aware.  In failing to apprise Plaintiff of facts of which Plaintiff should have been made aware, Defendant Luk was, in the very least, negligent.

104.    Plaintiff Arayos relied upon all the negligent representations and material omissions of Defendants Ellis, Sydkal and Luk set forth herein.

105.    Under all the relevant circumstances, Plaintiff's reliance upon the negligent misrepresentations and material omissions of Defendants Ellis and Sydkal was reasonable.

106.    As a proximate result of Plaintiff's reasonable reliance on the negligent misrepresentations and material omissions of Defendants Ellis and Sydkal, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.      Order that Defendants Ellis, Sydkal and Luk return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B.      Order Defendants Ellis, Sydkal and Luk to pay such compensatory and consequential damages to Plaintiffs as are appropriate, plus interest and costs;

C.      Order that Defendants Ellis, Sydkal and Luk pay punitive damages to the Plaintiffs; and

D.      Award such other and further relief as is just and proper.

## COUNT VI
### *Breach of Fiduciary Duty*
(Against Defendants Ellis and Sydkal)

107.    Plaintiffs repeat and restate the allegations in paragraphs 1-106 as if fully set forth herein.

108.    At all pertinent times hereto, a fiduciary relationship existed between Plaintiff Arayos on the one hand, and Defendants Ellis and Sydkal, on the other.  First, by hiring and otherwise retaining Ellis and Sydkal to operate and look after the affairs of the

Diamonds nightclub, Arayos placed a great deal of trust and confidence in Ellis and Sydkal.  Second, there was a great disparity of position and influence between the parties at issue when it came to the operations, assets, finances and operations of Diamonds, by virtue of the fact that: (a) Ellis and Sydkal were hired to oversee all operations of the Diamonds nightclub in Bangor – including but not limited to bookkeeping, payroll and financial management – while the company's absent majority owner was located in New Gloucester; and (b) Ellis and Sydkal had extensive prior experience operating nightclubs and gentlemen's clubs as compared to Arayos and its majority owner, which had none.

109.    In the context of the above-described fiduciary relationship, Defendants Ellis and Sydkal owed fiduciary duties of loyalty, obedience and care to Arayos.  Ellis and Sydkal breached the fiduciary duties owed to Arayos by, among other actions and omissions: (a) stealing, converting and otherwise misappropriate substantial sums of money and other assets from Arayos; (b) making false and misleading representations to Arayos and its majority owner, and omitting to disclose to Arayos facts which they were duty bound to disclose; (c) failing to inform Arayos of information that it needed to protect itself and its interests; (d) failing to manage and otherwise take care of the affairs and obligations of Diamonds so to avoid harm to the nightclub and Arayos; (e) failing to pay the liabilities and expenses of the Diamonds nightclub, including but not limited to the payroll taxes owed in connection with the compensation of its employees; and (f) conspiring with others, including but not limited to the other defendants named herein, in schemes to steal from and otherwise defraud Arayos.

110.    As a proximate result of the actions and omissions in breach of fiduciary duties owed by Defendants Ellis and Sydkal to Arayos, Plaintiff Arayos has suffered direct

and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

111.    The wrongful actions of Defendant set forth herein constitute actual malice and/or malice implied.  As a result, Plaintiffs are entitled to punitive damages in addition to compensatory and consequential damages arising from such wrongful actions.

WHEREFORE, Plaintiffs respectfully requests that this Court:

A.    Order that Defendants return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B.    Order Defendants to pay such compensatory and consequential damages to Plaintiffs as are appropriate, plus interest and costs;

C.    Order that Defendants pay punitive damages to the Plaintiffs; and

D.    Award such other and further relief as is just and proper.

## COUNT VII
### *Negligence*
(Against Ellis, Sydkal and Luk)

112.    Plaintiffs repeat and restate the allegations in paragraphs 1-111 as if fully set forth herein.

113.    As operator of Diamonds Gentleman's Club, Defendants Ellis and Sydkal owed a duty to Arayos to operate the club commensurate with the standards of care expected of nightclub operators hired to oversee management and operation.

114.    Defendants Ellis and Sydkal breached the duties of care owed to Arayos by, *inter alia*: (a) stealing, converting and otherwise misappropriate substantial sums of money

and other assets from Arayos; (b) making false and misleading representations to Arayos and its majority owner, and omitting to disclose to Arayos facts which they were duty bound to disclose; (c) failing to inform Arayos of information that it needed to protect itself and its interests; (d) failing to manage and otherwise take care of the affairs and obligations of Diamonds so to avoid harm to the nightclub and Arayos; (e) failing to pay the liabilities and expenses of the Diamonds nightclub, including but not limited to the payroll taxes owed in connection with the compensation of its employees; and (f) conspiring with others, including but not limited to the other defendants named herein, in schemes to steal from and otherwise defraud Arayos.

115. As bookkeeper for Diamonds Gentleman's Club, Defendant Luk owed a duty to Arayos to manage its books and accounts in a manner commensurate with the standards of care expected of bookkeepers.

116. Defendant Luk breached the duties of care owed to Arayos by, *inter alia*: (a) stealing, converting and otherwise misappropriate substantial sums of money and other assets from Arayos; (b) making false and misleading representations to Arayos and its majority owner, and omitting to disclose to Arayos facts which she was duty bound to disclose; (c) failing to inform Arayos of information that it needed to protect itself and its interests; (d) failing to manage and otherwise take care of the books, accounts and obligations of Diamonds so to avoid harm to the nightclub and Arayos; (e) failing to pay the liabilities and expenses of the Diamonds nightclub, including but not limited to the payroll taxes owed in connection with the compensation of its employees; and (f) conspiring with others, including but not limited to the other defendants named herein, in schemes to steal from and otherwise defraud Arayos.

34

117. By their actions and omissions in breach of duties of care owed to Arayos, Defendants Ellis, Sydkal and Luk were, in the very least, negligent.

118. As a proximate result of the negligent actions and omissions of Defendants Ellis, Sydkal and Luk, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

WHEREFORE, Plaintiffs respectfully requests that this Court:

A. Order that Defendants Ellis, Sydkal and Luk return at once to the Plaintiff all property and assets in Defendants' possession, custody or control that belong to the Plaintiff and/or over which Plaintiff has a right of possession and control;

B. Order Defendants Ellis, Sydkal and Luk to pay such compensatory and consequential damages to Plaintiffs as are appropriate, plus interest and costs; and

C. Award such other and further relief as is just and proper.

## COUNT VIII
### *Violation of 15 U.S.C. § 1114 et seq.*
### *Trademark Infringement*
(Against Ellis, Sydkal, Vellianitis, JMV and PAXOS)

119. Plaintiffs repeat and restate the allegations in paragraphs 1-118 as if fully set forth herein.

120. Arayos is the owner of the registered marks for Diamonds Gentleman's Club and the design logo associated therewith (the "Arayos Trademarks"), and has used those marks since February of 2012 to identify its goods and services and distinguish them goods and/or services sold by others. Arayos has prominently displayed its marks: inside and outside the building at 190 Harlow Street in Bangor, Maine where it operates; in print

and online advertisements; through general internet marketing including but not limited to Facebook; and in the marketing and sale of goods with the marks clearly depicted thereon.

121.   Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS (hereinafter the "Count VIII Defendants") have infringed Arayos' marks in commerce by marketing, selling and displaying goods and/or services at a nightclub in Mobile, Alabama using marks that are the same and/or confusingly similar to the Arayos Trademarks.

122.   The Count VIII Defendants' use of the marks that are the same or confusingly similar to the Arayos Trademarks has caused and is likely to cause confusion as to an association, sponsorship, or endorsement of the goods and services marketed and/or sold by the Count VIII Defendants.

123.   The Count VIII Defendants' use of the marks that are the same or confusingly similar to the Arayos Trademarks has caused and is likely to cause confusion, to cause mistake, or to deceive the purchasing public.

124.   The Count VIII Defendants' actions are intentional and willful.  The Count VIII Defendants have been on notice by virtue of Arayos' longstanding use of those marks since February of 2012, inclusive of periods during which Ellis and Sydkal were directly involved in the operation of Arayos' nightclub, Diamonds Gentleman's Club, in Bangor, Maine.  The Count VIII Defendants have also been on notice by virtue the registration of Arayos marks with the United States Patent and Trademark Office, and cease and desist letters sent to the Count VIII Defendants on January 6, 2014.

125.   Despite actual notice of Plaintiff's registrations and prior rights, the Count VII Defendants have refused to cease the infringing activity, with the following exception:

after receiving the cease and desist letter, Defendants removed the infringing design logo from its publicly viewable Facebook page, and restricted public access to the full content on its Facebook page that was publicly available at the time Arayos sent the cease and desist letters on January 6, 2014.

126.    As a proximate result of the Count VIII Defendants' infringement actions, Arayos has suffered damage to its reputation and goodwill, injury to its current and potential customer base, and a loss of revenue in an amount not yet determined.

127.    Arayos is entitled to recover the Count VIII Defendants' profits and reasonable royalties for the infringing use of the Arayos Trademarks, as well as damages, all of which may be trebled as the result of the Count VIII Defendants' willful conduct, as set forth in 15 U.S.C. § 1117.

128.    The Count VIII Defendants' intentional and willful infringement has caused, and will continue to cause, irreparable harm to Arayos, for which Arayos has no adequate remedy at law.  Therefore, pursuant to 15 U.S.C. § 1116, Arayos is entitled to injunctive relief that permanently bars the Count VIII Defendants from use of the Arayos Trademarks or any confusingly similar marks.

129.    The Count VIII Defendants' actions render this an exceptional case, further entitling Arayos to recover its attorneys' fees and costs of suit as set forth in 15 U.S.C. § 1117.

WHEREFORE, Plaintiff Arayos LLC respectfully requests that this Court:

A.    Award to Plaintiff an amount equal to the profits and reasonable royalties for the infringing use of the Arayos Trademarks by the Count VIII Defendants, pursuant to 15 U.S.C. § 1117;

B.      Award such compensatory damages to Plaintiff as area appropriate, plus interest and costs, pursuant to 15 U.S.C. § 1117;

C.      Award treble damages and attorney's fees and costs to Plaintiff pursuant to 15 U.S.C. § 1117;

D.      Enjoin the Count VIII Defendants from any further use of the Arayos Trademarks or any confusingly similar marks; and

E.      Award such other and further relief as is just and proper.

### COUNT IX

*Civil Conspiracy*
(Against Defendants Ellis, Sydkal, Burr and Luk)

130.    Plaintiffs repeat and restate the allegations in paragraphs 1-129 as if fully set forth herein.

131.    Defendants Ellis, Sydkal, Burr and Luk (hereinafter the "Count IX Defendants") acted in concert and combination with a common design to defraud Plaintiff Arayos and steal and otherwise convert monies and other property belonging to Arayos.

132.    In furtherance of their conspiracy to defraud Arayos and steal and otherwise convert monies and other property belonging to Arayos, the Count IX Defendants engaged in the following acts and omissions, among others: (a) they made false and misleading statements to Arayos and its majority owner and omitted to disclose material information when they had a duty to do so; (b) they stole, converted and/or misappropriated for their own use and benefit property belonging to Arayos; (c) they engaged in racketeering activity with an intent to defraud and otherwise steal from Arayos; and (d) they mismanaged and otherwise breached duties owed to Arayos with respect to the operation

and bookkeeping of Diamonds Gentleman's Club, by, inter alia, failing to pay tax and other obligations owed by Arayos.

133.    As a proximate result of the conspiratorial actions and omissions of the Count IX Defendants, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

134.    As a result of their actions and omissions constituting civil conspiracy under Maine law, each of the Count IX Defendants is liable for the tortious conduct of the other Count IX Defendants, including but not limited to the tortious conduct described in Counts III-VI of this Complaint.

WHEREFORE, Plaintiff Arayos LLC respectfully requests that this Court:

A.    Award such compensatory damages to Plaintiff as area appropriate, plus interest and costs;

B.    Order that Defendants pay punitive damages to the Plaintiffs; and

C.    Award such other and further relief as is just and proper.

## COUNT X
### *Civil Conspiracy*
(Against Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS)

135.    Plaintiffs repeat and restate the allegations in paragraphs 1-134 as if fully set forth herein.

136.    Defendants Ellis, Sydkal, Vellianitis, JMV and PAXOS (hereinafter the "Count X Defendants") acted in concert and combination with a common design to defraud Plaintiff Arayos and steal and otherwise convert monies and other property belonging to Arayos.

137.    In furtherance of their conspiracy to defraud Arayos and steal and otherwise convert monies and other property belonging to Arayos, the Count X Defendants engaged in the following acts and omissions, among others: (a) they made false and misleading statements to Arayos and its majority owner and omitted to disclose material information when they had a duty to do so; (b) they stole, converted and/or misappropriated for their own use and benefit property belonging to Arayos; and (c) they engaged in racketeering activity with an intent to defraud and otherwise steal from Arayos.

138.    As a proximate result of the conspiratorial actions and omissions of the Count X Defendants, Plaintiff Arayos has suffered direct and consequential harm, including but not limited to economic and financial losses of not less than $200,000.00, and damage to Plaintiff's reputation and good will in the community and the industry.

139.    The wrongful actions of Defendant set forth herein constitute actual malice and/or malice implied.  As a result, Plaintiffs are entitled to punitive damages in addition to compensatory and consequential damages arising from such wrongful actions.

140.    As a result of their actions and omissions constituting civil conspiracy under Maine law, each of the Count X Defendants is liable for the tortious conduct of the other Count X Defendants, including but not limited to the tortious conduct described in Counts III-VI of this Complaint.

WHEREFORE, Plaintiff Arayos LLC respectfully requests that this Court:

A.    Award such compensatory damages to Plaintiff as area appropriate, plus interest and costs;

B.    Order that Defendants pay punitive damages to the Plaintiffs; and

C.    Award such other and further relief as is just and proper.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff Arayos LLC hereby demands a jury trial on all claims set forth herein that are so triable.

ARAYOS LLC

By its counsel,

Dated:   February 17, 2014          /s/ John H. Branson

John H. Branson, Esq.
BRANSON LAW OFFICE, P.A.
482 Congress Street, Suite 304
P.O. Box 7526
Portland, Maine 04112-7526
(207) 780-8611
jbranson@bransonlawoffice.com